09-1929-pr
Jean-Laurent v. Wilkerson, et al.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

      At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 8th day of February, two thousand twelve.

PRESENT:

        JOSÉ A. CABRANES,
        CHESTER J. STRAUB,
        DEBRA ANN LIVINGSTON,

               *Circuit Judges.*

---

Phillip Jean-Laurent,

    *Plaintiff-Appellant*,

          v.                              09-1929-pr

C.O. Wilkerson[1], #11281, Cpt. Matos, #856, Cpt. Burrows, #997, C.O. Rodriguez, #15262, C.O. Robinson, #15169, Warden Jergenson, #1 John Doe, John Doe #2, Commissioner Martin F. Horn, Dominick Martinez,

    *Defendants-Appellees*,

Cpt. Martinez, #1218, Patrick Walsh, C.O. Deidra Colds, #12735, C.O. Terry Fowler, #3291,

---

    [1] C.O. Wilkerson is alternatively addressed as "Wilkinson" and "Wilinson" at various points in the parties' briefs and the Record on Appeal. As he is identified as Wilkerson on both the District Court and Court of Appeals docket sheets, we will leave well enough alone.

Donald McCarthy,

     *Defendants.*

_____

**FOR APPELLANT**:       Phillip Jean-Laurent, *pro se*, South Ozone Park, NY.

**FOR APPELLEES**:       Tahirih M. Sadrieh, Assistant Corporation Counsel (Francis Caputo, Assistant Corporation Counsel, *of counsel*), *for* Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY.

     Appeal from a judgment of the United States District Court for the Southern District of New York (David Hittner, United States District Judge for the Southern District of Texas, sitting by designation).[2]

     **UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED** in part, with respect to the dismissal of the claims against defendants Walsh, Fowler, Colds, Horn, and the City of New York, **VACATED** in part, with respect to its dismissal of plaintiff's state-law claims, and **REMANDED** for further proceedings.

     Appellant Phillip Jean-Laurent, proceeding *pro se*, appeals from various orders and decisions of the District Court during the course of his lawsuit against certain officers of the City of New York Department of Correction ("DOC"), which ended in a jury verdict in his favor on claims against two defendants for conducting an unreasonable strip search and using excessive force, and against two supervisory defendants for negligent supervision. The jury returned a verdict in favor of four other defendants on claims of failure to intervene and negligent supervision. The jury awarded Jean-Laurent nominal compensatory damages and $15,000 in punitive damages. We assume the parties' familiarity with the underlying facts and procedural history of the case, and the issues on appeal.

## I.    Decision Partially Granting Motion to Dismiss

     Jean-Laurent first challenges the District Court's decisions dismissing his claims against Warden Patrick Walsh and Officers Terry Fowler and Deidra Colds. "We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally,

---

[2] This case was originally assigned to Southern District Judge Victor Marrero, who ruled on the motions that are the subject of the appeal, before being transferred to Judge Hittner prior to trial.

accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Although factual allegations in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

With respect to Jean-Laurent's claims against Warden Patrick Walsh, we affirm the District Court's decision of July 6, 2006, dismissing these claims substantially for the reasons stated by the District Court. *See Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 326 (S.D.N.Y. 2006).

We decline to address Jean-Laurent's argument that his First Amended Complaint should have been liberally construed to allege that Warden Walsh implemented an unconstitutional policy related to the use of excessive force, as he raises this argument for the first time on appeal. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.") (alteration omitted).

To the extent that Jean-Laurent has reiterated his argument that Warden Walsh was aware of, yet failed to prevent, the unconstitutional conduct of his subordinates, the District Court correctly determined that Jean-Laurent's pleadings contained no specific factual allegations suggesting that this may have been the case.

We also affirm, substantially for the reasons stated by the District Court, its judgment dismissing Jean-Laurent's claims against Officers Terry Fowler and Deidra Colds, for failing to intercede on his behalf. "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). "Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be." *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). However, "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

Here, Jean-Laurent did not allege in his First Amended Complaint that Fowler or Colds observed, or had reason to know of, the second alleged violation of his rights, during which he was

3

allegedly taken to a stairwell, ordered to strip, and struck in the face. Rather, he alleged only that they were present during the first alleged violation of his rights, when he "was stood to his feet by the collar of his shirt by officer Wilkinson and slammed against the wall as officer Wilkinson got in plaintiff's face and continued to verbalize him and as ADW Jorgensen, Cpt. Burrows, Matos, C.O. Fowler, and Colds stood by and watched."

The District Court properly concluded that the First Amended Complaint failed to allege facts showing that Fowler and Colds had a reasonable opportunity to intercede to stop the first alleged violation and that they observed, or had reason to know of, the second violation, in the stairwell. Although Jean-Laurent argued in papers opposing the motion to dismiss that Fowler and Colds should have known that his rights would be violated in the stairwell because they allegedly had witnessed the first assault, were nearby and had heard another inmate scream from the vicinity of the stairwell, and had observed Jean-Laurent being escorted to the stairwell, the District Court was required only to address the sufficiency of the allegations actually made in the First Amended Complaint. In the absence of allegations in the First Amended Complaint that would plausibly support the inference that Fowler and Colds observed, or had reason to know, that Jean-Laurent's rights were being violated, and had an opportunity to intercede, the District Court properly dismissed these claims.

## II.     Decision Partially Granting Summary Judgment

Next, Jean-Laurent challenges the District Court's decision, on summary judgment, dismissing Jean-Laurent's claims alleging supervisory liability on the part of Commissioner Horn and municipal liability on the part of the City of New York. We review an order granting summary judgment *de novo*, and ask whether the District Court properly concluded that there were no genuine issues of material fact with respect to a particular claim and that the moving party was entitled to judgment as a matter of law. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). In determining whether there are genuine issues of material fact, we are "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks omitted). However, "conclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion." *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

Here, substantially for the reasons stated by the District Court in its Decision and Order of March 24, 2008, *see Jean-Laurent v. Wilkerson*, 540 F. Supp. 2d 501 (S.D.N.Y. 2008), we affirm the District Court's decision to grant the defendants' summary judgment motion with respect to the claim against Commissioner Horn and any arguable claim that he had raised against the City under *Monell v. Department of Social Services.*, 436 U.S. 658 (1978). The moving party is entitled to summary

4

judgment where "the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor" on an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010).

In the circumstances presented here, Jean-Laurent had the burden of establishing the existence of a municipal policy or custom that caused a deprivation of his constitutional rights, whether implemented by Commissioner Horn or otherwise. *See Hartline v. Gallo*, 546 F.3d 95, 103 (2d Cir. 2008) ("To prevail against a municipality on a § 1983 claim, a plaintiff must demonstrate both an injury to a constitutionally protected right and that the injury was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy." (internal quotation marks omitted)); *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) (noting that a plaintiff must offer "proof of . . . a [municipal] custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself"), *overruled on other grounds by Leatherman v. Terrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

Jean-Laurent did not carry this burden, inasmuch as he offered no relevant or admissible evidence in support of his assertion that the City of New York had established a policy or custom of "use of excessive and brutal physical force against inmates/detainees by correctional officers," and he did not establish that the deprivation of his constitutional rights was caused by any such policy. Jean-Laurent's citation to various lawsuits involving inmate claims for the excessive use of force is not probative of the existence of an underlying policy that could be relevant here. Similarly, purported inadequacies in the investigations of complaints against DOC officers are not probative of the existence of a policy under which Jean-Laurent was deprived of a constitutional right.

## III.    Religious Rights Claims Under §§ 1983 and 2000cc-1

Jean-Laurent next argues that the District Court erroneously precluded him from proceeding to trial on his claims for violation of his religious rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc-1, *et seq.* It is true that the District Court did not address these purported claims in its order on the defendants' motion for summary judgment, but this appears to be because the Second Amended Complaint states no such claims. To be sure, the District Court had previously held, with respect to the First Amended Complaint, that Jean-Laurent had sufficiently stated claims under the First Amendment and § 2000cc-1, *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 324 (S.D.N.Y. 2006), but the operative complaint at the time the District Court ruled on defendants' motion for summary judgment was the Second Amended Complaint. *See Dluhos v. Floating & Abandoned Vessel Known as "New York"*, 162

5

F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."). Indeed, the District Court stated, at a pretrial conference, that it did "not have any understanding that this trial was going to be about that religious claim." As the Court explained, "[t]he summary judgment ruling that the court issued on 24 March 2008 addresses all of the issues that the court understood were in the case at that point. Those all derived from the amended complaint that [Magistrate] Judge Eaton allowed."

Based on our review, the Second Amended Complaint contains no allegations relating to Jean-Laurent's religious beliefs nor any facts from which one might infer an allegation of infringement on his religious liberty. Accordingly, the District Court did not err when it prevented Jean-Laurent from trying claims before a jury that were not stated in the Second Amended Complaint.

## IV. Decision Partially Denying Motion *In Limine*

Jean-Laurent next challenges the District Court's decision granting defendants' *in limine* motion to preclude him from calling a fellow inmate, Louis Ramon, as a witness at trial. We review a district court's decision to admit or preclude evidence for "abuse of discretion." *See Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 16 (2d Cir. 1996); *cf. Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (internal quotation marks, citations, and modifications omitted)). A new trial is warranted if the court's abuse of discretion clearly prejudiced the outcome of the trial. *See Hygh v. Jacobs*, 961 F.2d 359, 365 (2d Cir. 1992). We will grant a new trial only if we are "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Pescatore*, 97 F.3d at 17 (internal quotation marks omitted).

Here, although the precise reason for the District Court's decision to preclude Jean-Laurent from calling Ramon at trial is not clear, we may affirm that decision on any ground appearing in the record. *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 49 (2d Cir. 2010). Ramon's testimony would have been relevant had he witnessed the strip search and assault of Jean-Laurent in the staircase, but Jean-Laurent's contention that Ramon witnessed these events is belied by the record. Jean-Laurent testified during his deposition that, though Ramon was initially present when the defendants led him to the stairwell, the defendants immediately "dragged [Ramon] out of the staircase," at which point Jean-Laurent was "in the staircase alone." In addition, he conceded at a pretrial conference on the *in limine* motion that Ramon was not an eyewitness to the events.

Further, in his motion *in limine*, Jean-Laurent suggested that he intended to elicit Ramon's testimony with respect to "assaultive conditions" to which the defendants had subjected Ramon immediately prior to assaulting Jean-Laurent. Such evidence of alleged "similar acts" has a high potential for causing undue prejudice. *See Huddleston v. United States*, 485 U.S. 681, 691 (1988). As a result, the District Court would not have abused its discretion in concluding that the probative value of his testimony was substantially outweighed by the danger of unfair prejudice under Federal Rule of Evidence 403, or that his testimony was inadmissible as evidence of a similar act offered to prove character under Fed. R. Evid. 404(b). Accordingly, we affirm without reaching the question of prejudice or Jean-Laurent's remaining challenges to the preclusion of Ramon's testimony.

## V.     State Law Claims

Following the partial dismissal of his First Amended Complaint, Jean-Laurent sought leave to file a Second Amended Complaint. The motion was automatically referred to the assigned Magistrate Judge, pursuant to the District Judge's standing referral order under 28 U.S.C. § 636(b)(1)(A), for "General Pretrial" matters, including "scheduling, discovery, non-dispositive pretrial motions, and settlement."

The proposed Second Amended Complaint included the state-law claims that the District Court had allowed to go forward in its order on defendants' earlier motion to dismiss, as well as certain new claims. In opposing the motion to amend, the defendants argued that Jean-Laurent should be precluded from raising any state-law claims on the ground that he had failed to file a notice of claim pursuant to New York General Municipal Law ("N.Y. Gen. Mun. Law") § 50-e(1).[3] Jean-Laurent responded that he was not obligated to file a notice of claim because he was suing the defendants individually for intentional wrongdoing undertaken outside the scope of their employment.[4]

---

[3] Under N.Y. Gen. Mun. Law § 50-e(1)(a), "[i]n any case founded upon a tort where a notice of claim is required by law as a condition precedent to the commencement of an action . . . against a public corporation . . . or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises." A notice of claim is a condition precedent to the filing of an action against an employee of the City of New York. *Id.* § 50-k(6). However, as discussed further below, where an action is filed against an employee, but not against the City, a notice of claim is only required if the City has a statutory obligation to indemnify the employee. *Id.* § 50-e(1)(b).

[4] As prefaced above, where a plaintiff brings an action against an employee of a public corporation, "but not against the public corporation, service of the notice of claim upon the public corporation shall be required *only if* the corporation has a statutory obligation to *indemnify* such person under this chapter or any other provision of law." N.Y. Gen. Mun. Law § 50-e(1)(b)

7

The Magistrate Judge granted Jean-Laurent's motion for leave to file a second amended complaint, but (among other conditions) expressly "den[ied] plaintiff leave to serve any amended complaint to the extent it contains any state-law claims." In so doing, the Magistrate Judge not only denied plaintiff leave to plead new claims, but effectively dismissed Jean-Laurent's existing state-law claims, which had survived the defendant's motion to dismiss. This amounted to a ruling on a dispositive matter, something that exceeds a magistrate judge's authority under 28 U.S.C. § 636(b)(1)(A). *See Williams v. Beemiller Inc.*, 527 F.3d 259, 265 (2d Cir. 2008) (holding that a magistrate judge may not make an order that is "functionally equivalent to an order of dismissal") (internal quotation marks omitted). Although under 28 U.S.C. § 636(b)(1)(B), a magistrate judge may submit "recommendations for the disposition, by a judge of the court," of dispositive motions, such recommendations are subject to *de novo* review by the presiding district judge. *Id.* § 636(b)(1)(C). *See generally Kiobel v. Millson*, 592 F.3d 78, 106 (2d Cir. 2010) (Jacobs, *J.*, concurring) ("When a district court refers a matter to a magistrate judge under § 636(b), the extent of the magistrate judge's authority turns generally on whether the matter is 'dispositive.' As to nondispositive matters, the magistrate judge may rule, but as to dispositive matters, the magistrate judge may do no more than recommend. In turn, the district court reviews a magistrate judge's order on nondispositive matters under a clearly erroneous standard, but reviews its recommendation *de novo*." (internal quotation marks and citations omitted)).

The District Court adopted the Magistrate Judge's ruling in an order dated November 30, 2007. In so doing, the District Court applied the standard of review for district courts evaluating a magistrate judge's ruling on a nondispositve matter under 28 U.S.C. 636(b)(1)(A). *See Jean-Laurent v. Wilkerson*, 523 F. Supp. 2d 386, 387 (S.D.N.Y. 2007) ("A district court evaluating a Magistrate Judge's order with respect to a matter not dispositive of a claim or defense may adopt the Magistrate Judge's findings and conclusions as long as the factual and legal bases supporting the ruling are not *clearly erroneous or contrary to law*." (emphasis added)). Under the circumstances, the District Court should have conducted a *de novo* review of the Magistrate Judge's ruling effectively dismissing Jean-

---

(emphases added). Under § 50-k(3):

> The city shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court . . . provided that the act or omission from which such judgment or settlement arose occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged damages were sustained; the duty to indemnify and save harmless prescribed by this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee.

8

Laurent's state-law claims. Because Jean-Laurent is "entitled to the District Court's *de novo* review of the Magistrate Judge's" ruling, *Beemiller*, 527 F.3d at 266, we vacate the District Court's November 30, 2007, order and remand for it to undertake such a review.

In so doing, we note in passing that the interplay between § 50-e(1) and § 50-k(3) is quite complicated and there does not appear to be clear authority addressing whether Jean-Laurent was obliged to file a notice of claim under the circumstances presented here. Whereas the question of whether a City employee is entitled to representation by the Corporation Counsel under § 50-k(2) is for the Corporation Counsel to decide in the first instance, there is no such role accorded to the Corporation Counsel with respect to the question of indemnification under § 50-k(3). *See Hassan v. Fraccola*, 851 F.2d 602, 603–05 (2d Cir. 1988) (discussing distinction between the duty to defend and the duty to indemnify); *Banks v. Yokemick*, 214 F. Supp. 2d 401, 408 (S.D.N.Y. 2002) (observing that the language of § 50-k(3) "implies that, barring a settlement before trial, a final indemnification determination will await a judgment against the employee on the merits in the underlying action" and, "unlike § 50-k(2), does not explicitly indicate who conducts the requisite inquiry").

We need not resolve this question on the record before us. Instead, we hold that the Magistrate Judge exceeded his authority under 28 U.S.C. § 636(b)(1)(A) by effectively dismissing Jean-Laurent's state-law claims and the District Court applied the incorrect standard in reviewing the Magistrate Judge's decision. Accordingly, we vacate the District Court's decision of November 30, 2007, adopting the Magistrate Judge's reasoning under a "clearly erroneous" standard of review, and remand to the District Court for *de novo* reconsideration of the Magistrate Judge's March 8, 2007, order in light of the discussion above and any additional arguments of the parties.[5]

**CONCLUSION**

To summarize:

(1) We affirm the District Court's judgment of July 6, 2006, dismissing Jean-Laurent's claims against defendants Walsh, Fowler, and Colds;

---

[5] We note as well, that the District Court on remand may, in its discretion, decline to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law . . . .").

(2) We affirm the District Court's judgment of March 24, 2008, dismissing Jean-Laurent's claims against Commissioner Horn and the City under *Monell*;

(3) We find no error in the District Court's decision to prevent Jean-Laurent from trying his purported claims of religious discrimination under the First Amendment and 42 U.S.C. §§ 2000cc-1, *et seq.*;

(4) We find no error in the District Court's order precluding Jean-Laurent from calling inmate Ramon as a witness at trial; and

(5) We vacate the District Court's orders adopting the Magistrate Judge's decision denying Jean-Laurent leave to file a second amended complaint to the extent it raised any state-law claims and remand for *de novo* reconsideration of the Magistrate Judge's order of March 8, 2007;

Accordingly, for the foregoing reasons, the judgment of the District Court is hereby **AFFIRMED** in part, with respect to the dismissal of the claims against defendants Walsh, Fowler, Colds, Horn, and the City of New York; **VACATED** in part, with respect to its dismissal of plaintiff's state-law claims; and **REMANDED** for further proceedings consistent with this ruling.

Upon remand, the District Court may, in its discretion, decline to exercise supplemental jurisdiction over the remaining state-law claims. We express no view on that question.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk